IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK VERNON,            )<br>                            )<br>    Plaintiff,              )<br>                            )<br>    vs.                     )<br>                            )<br>N. McGLONE, J. RIGGS,       )<br>VANESSA BELL, MATTHEW SWALLS,)<br>and UNKNOWN AND UNNAMED ILLINOIS )<br>DEPARTMENT OF CORRECTIONS   )<br>PERSONNEL,                  )<br>                            )<br>    Defendants.             )  | Case No. 22 C 4890 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Derrick Vernon, who was formerly incarcerated at various Illinois Department of Corrections (IDOC) facilities, asserts claims under 42 U.S.C. § 1983 against N. McGlone, the records office supervisor at Vienna Correctional Center, and Matthew Swalls, the warden there; Vanessa Bell, the records office supervisor at Western Illinois Correctional Center; Jane Riggs, the records office supervisor at Kewanee Life Skills Re-entry Center; and unknown and unnamed IDOC personnel. Vernon alleges that the defendants violated his rights under the Eighth Amendment by repeatedly dismissing his complaints that his release date was wrong and causing him to remain in prison for approximately two and one-half years after he had completed the full term of his sentence. The defendants have moved to dismiss Vernon's claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below,

the Court dismisses Vernon's claims against defendant Matthew Swalls but otherwise denies the motion.

## Background

The following facts are taken from Vernon's complaint and the defendants' motion. In 1997, Vernon was convicted of an offense in Tennessee state court and was sentenced to prison terms totaling twenty-four years. From September 2, 1995 to June 16, 1999, Vernon remained in custody in Tennessee.

In June 1999, Vernon was extradited to Cook County and held in pretrial detention for a murder he allegedly committed in 1993.[1] In April 2003, Vernon was convicted for that offense, and in May 2003, a state court judge sentenced him to a thirty year prison term, to be served consecutive to his Tennessee sentence. The Illinois state court judge granted Vernon 1,456 days of time-served credits to be applied to his sentence for the time he spent awaiting trial in Illinois.

In July 2003, Vernon was returned to Tennessee to complete service of his sentence there. In January 2009, Vernon completed his Tennessee sentence and was transported to Illinois to begin serving his Illinois sentence.

The first IDOC facility to which Vernon was sent was the Northern Reception and Classification Center (NRCC) in Joliet, Illinois. Vernon alleges that, upon his arrival at the NRCC, a record office supervisor "miscalculated [his] release date by failing to apply any good time credit or credit for 1,456 days actually served." First Am. Compl. ¶ 15.

In March 2009, Vernon was transported to Menard Correctional Center. Vernon

---

[1] Because Vernon was prosecuted under the name "Derrick Crowder" in the Illinois criminal case, his last name in IDOC's records while in custody was Crowder, not Vernon.

alleges that "[t]hereupon, IDOC personnel determined that [he] should receive fifty percent good time credit against the thirty-year Illinois sentence." *Id*. ¶ 17.

Then, in October 2009, Vernon was transported to Western Illinois Correctional Center (WICC). Vernon remained incarcerated there until July 2013. Vernon alleges that, while at WICC, he "informed the facility's records office supervisor, Vanessa Bell, by various means, that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated." *Id.* ¶ 19. He further alleges that Bell "willfully opposed [his] request to apply the credits" and was "deliberately indifferent to facts demonstrating [his] release date had been miscalculated." *Id.* ¶ 20.

On June 5, 2013, Vernon filed a motion for post-conviction relief in Illinois state court, contending that he was "entitled to 1,518 days of jail-time credits against his Illinois sentence." Defs.' Mot. to Dismiss, Ex. 4, Motion for Order *Nunc Pro Tunc*, filed June 5, 2013. On June 27, 2013, the state court denied Vernon's motion. Vernon appealed, and the Illinois Appellate Court affirmed the trial court's ruling. *People v. Crowder*, No. 1-13-2578, slip op. ¶¶ 4-5 (Ill. App. Ct. June 22, 2015).

In July 2013, Vernon was transported to Big Muddy River Correctional Center, where he remained in custody until September 2015. In September 2015, Vernon was transported to Centralia Correctional Center, where he remained in custody until April 2016. In April 2016, Vernon was transported to Robinson Correctional Center, where he remained in custody until July 2018. Vernon alleges that, while at all three facilities, he informed each facility's records office supervisor of his release date miscalculation and that each supervisor "willfully opposed [his] request to apply the credits" and was "deliberately indifferent to facts demonstrating [his] release date had been

miscalculated." *Id.* ¶¶ 22–29.

In July 2018, Vernon was transported to Vienna Correctional Center, where he remained in custody until July 2021. Vernon alleges that, while at Vienna, he "informed the facility's records office supervisor, N. McGlone, and the warden, Matthew Swalls, that his 1,456 days of credit were not being applied against his sentence and his release date was miscalculated." *Id.* ¶ 31. Vernon further alleges that both McGlone and Swalls "willfully opposed [his] request to apply the credits" and were "deliberately indifferent to facts demonstrating [his] release date had been miscalculated." *Id.* ¶ 32.

Finally, in July 2021, Vernon was transported to Kewanee Life Skills Re-entry Center, where he remained until his release from IDOC custody on February 22, 2022. Vernon alleges that, while at Kewanee, he "informed the facility's records office supervisor, J. Riggs that his 1,456 days of credit were not being applied against his sentence and his release date was miscalculated." *Id.* ¶ 31. Vernon alleges that Riggs "responded that the Chief Supervisor in Springfield had already addressed [his] issue in 2011 and concluded that [his] credits were calculated correctly." *Id.* ¶ 36. He also alleges that Riggs "willfully opposed [his] request to apply the credits" and was "deliberately indifferent to facts demonstrating [his] release date had been miscalculated." *Id.* ¶ 37.

On February 16, 2022, Vernon alleges, he informed Kewanee's warden, James Corothers, of his release date miscalculation. Vernon says that on February 22, 2022, records office supervisor Riggs "recalculated [Vernon's] sentence and determined that [he] was supposed to be awarded 1,456 days credits for time actually served against his Illinois sentence and that his release date was supposed to be June 9, 2019." *Id.* ¶ 39.

4

Vernon was released that same day.

Vernon alleges that, in total, he was imprisoned for 989 days beyond the appropriate conclusion of his prison sentence in violation of the Eighth Amendment. On September 9, 2022, Vernon filed the present action. The defendants have moved to dismiss for failure to state a claim.

## Discussion

In deciding a motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Heng v. Heavner, Beyers & Milhar, LLC*, 849 F.3d 348, 351 (7th Cir. 2017). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The defendants have moved to dismiss Vernon's claim on the following grounds: (1) his claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) because he failed to seek state court relief or habeas relief prior to bringing his section 1983 claim; (2) he cannot maintain an Eighth Amendment claim based on a mistake of Illinois law; (3) even if Vernon could state a claim under the Eighth Amendment, he does not allege sufficient facts establishing that defendant Swalls, a prison warden, was personally involved in the claimed misconduct; (4) Vernon likewise fails to allege sufficient facts to show defendant Riggs was deliberately indifferent given that she was the one who ultimately ensured he was released; and (5) the defendants are entitled to qualified immunity. The Court agrees with the defendants that Vernon has not alleged sufficient facts regarding

5

Swalls's involvement in a violation of Vernon's Eighth Amendment rights but overrules all of the defendants' other arguments for dismissal.

**A.** *Heck* **bar**

Among other things, the defendants contend that Vernon's claim is barred under *Heck*. In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id*. at 486. Thus, *Heck* bars a lawsuit under section 1983 where a judgment in favor of the plaintiff necessarily would imply the invalidity of his criminal conviction or sentence, unless the criminal conviction or sentence has been declared invalid. *Id*. at 487; *see also*, *Savory v. Cannon*, 947 F.3d 409, 424–29 (7th Cir. 2020) (holding that *Heck*'s favorable termination rule applies in all section 1983 cases that implicate "the validity of [a] conviction or the length of [a] sentence" regardless of the availability of habeas relief).

The defendants contend that Vernon's allegations call into question the duration of his confinement, which implicates *Heck* and its progeny. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (holding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction *or internal prison proceedings*)—if success in that action would necessarily demonstrate the *invalidity of confinement or its duration*") (emphasis added). The defendants further

contend that fact that Vernon is no longer in custody does not relieve him of the favorable termination requirement. *Heck*, 512 U.S. at 490 n.10; *see also*, *Savory*, 947 F.3d at 420–21 (holding that *Heck* footnote ten is binding and has not yet been abrogated by the Seventh Circuit). Vernon contends that his claim does not trigger *Heck* because he is not challenging the validity of his underlying conviction or sentence. Instead, he contends he is challenging the constitutionality of the conduct of the IDOC officials to whom he brought his complaints regarding the error they made when calculating his release date.

The Court agrees with Vernon. He in no way disputes the propriety of his conviction, the length of his sentence, or even the time-served credits that he was owed. Rather, he challenges the defendants' failure to investigate his complaints regarding their *misapplication* of those credits to his sentence. The conduct that Vernon alleges resulted in him being confined beyond the end of his actual sentence. As the defendants point out, "[t]he test for whether damages are barred under section 1983 is whether the district court's 'favorable termination' of the litigation would have the effect or implication that the prisoner's conviction or sentence was invalid." Defs.' Mot. to Dismiss at 6 (quoting *Heck,* 512 U.S. at 487-88). Here it would not. A judgment in this case in Vernon's favor would not imply or in any other way call into question his sentence or conviction. Rather, he would be recovering damages for being confined beyond the actual term of his sentence based on the deliberate indifference of the IDOC officials who, he says, turned the other way when he informed them of the improper confinement.

For these reasons, Vernon's failure to seek relief in state court or via a habeas

7

corpus petition does not preclude his section 1983 claim under *Heck*. The Court declines to dismiss Vernon's claim on this basis.

**B.     Eighth Amendment**

Vernon alleges that the defendants violated his Eighth Amendment rights by detaining him for approximately two and one-half years beyond the actual term of his sentence. An incarcerated person may sustain a claim for an Eighth Amendment violation if he is incarcerated for longer than he should have been without penological justification because of the deliberate indifference of prison officials. *See Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014). An official is deliberately indifferent when, "despite a known risk," he or she "does nothing" or when he or she "takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016).

The defendants contend that "[Vernon] cannot state an Eighth Amendment claim based on a mistake of Illinois law." Defs.' Mot. to Dismiss at 1. They further contend that "'the Supreme Court has never held that keeping a person in prison beyond the end of his term violates the Eighth Amendment,' because mistakes of state law do not necessarily implicate the Cruel and Unusual Punishments Clause." Defs.' Mot. to Dismiss at 5 (quoting *Wells v. Caudill*, 967 F.3d 598, 602 (7th Cir. 2020)).

Vernon, however, does not assert a claim that the defendants made a mistake of state law. It may be that the defendants' claimed repeated ignoring of Vernon's complaints about his release date—and thus incarcerating him longer than the law allowed—constitutes an error of state law. But that does not mean that is *all* it was. To

put it another way, the fact that conduct also violates state law does not preclude it from also violating the federal Constitution. A police officer's use of excessive force, for example, typically constitutes battery (or more) or under state law, but it may also violate the Constitution. Vernon has also alleged that his federal constitutional rights were violated based on the defendants' deliberate indifference to his legally improper detention. The Seventh Circuit has concluded that such conduct may violate the Constitution. *Figgs*, 829 F.3d 895, 902 (7th Cir. 2016) ("Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference.").

For these reasons, Vernon is not entitled to dismissal on this basis.

**C.     Swalls and Riggs**

The defendants contend that Vernon has failed to allege sufficient facts that would allow a plausible inference that defendants Swalls, Vienna's warden, and Riggs, the records office supervisor at the Kewanee Life Skills Re-entry Center, were deliberately indifferent to a known and significant risk that Vernon was being imprisoned beyond his release date. The Court agrees with defendants regarding Swalls, but not Riggs.

Regarding Riggs, Vernon alleges that he informed Riggs in July 2021 about the error in his release date. He further alleges that in August 2021, Riggs told him that his complaint had already been addressed by "the Chief Supervisor in Springfield" back in 2011. First Am. Compl. ¶ 36. The defendants seize upon the fact that it was Riggs who ultimately investigated and corrected Vernon's release date in February 2022, contending that this undercuts Vernon's allegation that Riggs was deliberately

indifferent. But the fact that Riggs ultimately took appropriate action does not mean that, as a matter of law, she could not have been deliberately indifferent at an earlier time. From Vernon's allegations, one may plausibly infer that Riggs did not take steps to actually address the issue until after he raised it again in February 2022, this time by going over her head to the warden, James Corothers. One may plausibly infer Riggs was deliberately indifferent by ignoring Vernon's complaint until months later, when Vernon got her boss involved.

Regarding Swalls, however, Vernon alleges only that he "informed" Swalls that his release date was miscalculated and then states, in a conclusory fashion, that Swalls willfully ignored his request. This bare conclusion is insufficient to support a deliberate indifference claim against him. In his response to the defendants' motion to dismiss, Vernon states that, from these facts, one could draw the inference that Swalls failed to ensure that the records office supervisor at his facility adequately investigated the issue. But no facts are alleged that would support this. Among other things, Vernon says nothing about Swalls's involvement—if any—in overseeing the review of Vernon's time calculation or any of his complaints.

For these reasons, the Court dismisses Vernon's claim against Swalls but declines to dismiss his claim against Riggs.

**D.  Qualified immunity**

Finally, the defendants argue that even if Vernon has raised triable claims that they violated his constitutional rights, they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs*, 829 F.3d

10

at 905 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).  Once a defendant raises the qualified immunity defense, a plaintiff must show a violation of his federal constitutional rights and that the constitutional standard at issue was "clearly established at the time of the alleged violation." *Id.*  The law is "clearly established" when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id.* (quoting *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001)).  "[A] plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Jacobs v. City of Chicago,* 215 F.3d 758, 765 n. 3 (7th Cir. 2000).

      Defendants argue that they are "entitled to qualified immunity because there was no clearly established law that pretrial credits should be applied to defendants' consecutive sentences with the risk that double-credits would be applied in violation of [the provision of the Illinois Uniform Code of Corrections that governs calculating consecutive sentences and credits, 730 Ill. Comp. Stat. 5/5-8-4(e)]." Defs.' Mot. to Dismiss at 15.  But that's not the claim Vernon asserts, or at least it can't be read that way in his complaint.  First, nowhere in the complaint does Vernon allege that a misinterpretation of 730 Ill. Comp. Stat. 5/5-8-4(e) is what caused him to be imprisoned beyond his release date.  Rather, what he has alleged is that the defendants willfully ignored and were deliberately indifferent to his requests to have his release date corrected.  The defendants may have a viable qualified immunity argument along these lines at the summary judgment stage, but there is no basis for a qualified immunity dismissal under Rule 12(b)(6) based on the complaint as Vernon has alleged it.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds" . . . . "because an immunity defense usually depends on the facts of the case").

As already discussed, Vernon's allegations are sufficient at this stage to support an inference that the defendants violated Vernon's Eighth Amendment rights by turning a blind eye to complaints and failing to take steps to verify his correct release date. Thus, the availability of the qualified immunity defense turns on whether the relevant constitutional standard was "clearly established at the time of the alleged violation," from January 2009 through February 2022. *Campbell*, 256 F.3d at 699. It was. *See Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir. 1985) (holding that the Eighth Amendment is violated when prolonged detention is the result of deliberate indifference, where prison officials failed to investigate claims in prisoner's letter questioning the method used to compute his release date); *Sample v. Diecks*, 885 F.2d 1099, 1108–10 (3d Cir. 1989) (holding same, where senior record officer failed to take substantive action on prisoner's claim that he was being held despite the expiration of his sentence); *Alexander v. Perrill*, 916 F.2d 1392, 1397–99 (9th Cir. 1990) (rejecting defendants' qualified immunity argument and concluding that the right to be free from incarceration beyond the expiration of one's sentence was clearly established, where prison officials failed to investigate the prisoner's claim that he was incorrectly denied credit for time served in a foreign jail).

Moreover, in *Figgs*, a closely analogous case, the Seventh Circuit held that as of 2011, when the plaintiff had complained to a prison record official that his release date was wrong, "it was clearly established . . . that the failure to investigate a claim that an

inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Figgs*, 829 F.3d at 906. In light of *Figgs* and the cases preceding it, the defendants' qualified immunity defense lacks merit.

To get around this issue, the defendants attempt to locate the "clearly established" inquiry in the highly specific set of facts that they contend led to Vernon's over-detention—facts that Vernon himself does not allege in his complaint—specifically, whether Vernon was entitled to "double days of credits for consecutive sentences." Defs.' Mot. to Dismiss at 11. Again, however, this is not what Vernon alleges in his complaint, which is what the Court has to consider at the current procedural stage of the case. That aside, in order for the law to be clearly established, "'the very action in question' need not have previously been held unlawful for a public official to have reasonable notice of the illegality of some action." *Figgs*, 829 F.3d at 906 (quoting *Viilo v. Eyre*, 547 F.3d 707, 710–11 (7th Cir. 2008). The situation here, as alleged in Vernon's complaint, is that he put the defendants on notice of the illegality of his continued incarceration but they did nothing to investigate this. Analyzing the "clearly established" question in the manner the defendants propose ignores the "broader deficiencies" with the course of action, or inaction, Vernon alleges that the defendants took. *Id*.

In sum, the defendants are not entitled to dismissal under Rule 12(b)(6) based on their defense of qualified immunity.

## Conclusion

For the foregoing reasons, the Court dismisses the plaintiff's claims against defendant Matthew Swalls but otherwise denies the motion [dkt. no. 27]. The remaining

defendants are directed to answer the amended complaint within twenty-one days of this order. In addition, the Court directs the parties to confer and attempt to agree upon a discovery and pretrial schedule. A joint status report in this regard is to be filed on May 1, 2023. The case is set for a telephonic status hearing on May 5, 2023 at 9:10 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 24, 2023