**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Derrick Vernon, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case no. 1:22-cv-04890 |
| ) | |
| v. ) | |
| ) | The Honorable Matthew F. Kennelly |
| N. McGlone, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT, JURY DEMAND, AND AFFIRMATIVE DEFENSES**

Defendants, N. McGlone and J. Riggs, by and through their attorney, Kwame Raoul, Attorney General of Illinois, hereby answer Plaintiff's First Amended Complaint (ECF No. 4), assert a demand for trial by jury, and assert specific affirmative defenses as follows:

**Answer**

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This Court has jurisdiction under and by virtue of 28 U.S.C. Sections 1331 and 1343.

**ANSWER**: Admitted.

2. The venue is founded in this judicial Court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**ANSWER**: Denied.

3. At all times mentioned herein, Plaintiff Derrick Vernon ("Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this Court.

**ANSWER**: Admitted.

4. At all times material, Defendants N. McGlone, J. Riggs, Vanessa Bell, Matthew Swalls, and Other Unknown and Unnamed Illinois Department of Corrections Personnel were employed by the Illinois Department of Corrections and acted under the color of state law and as the employees, agents, or representatives of the Illinois Department of Corrections. Plaintiff is suing Defendants in their individual capacities.

**ANSWER**: Admitted.

5. On or about September 2, 1995, Plaintiff was transported from Minnesota to Shelby County Jail in Memphis, Tennessee, on an arrest warrant for an alleged violation of Tennessee law.

**ANSWER**: Admitted.

6. In September 1997, Plaintiff was found guilty of violating Tennessee law.

**ANSWER**: Admitted.

7. In December 1997, Plaintiff was sentenced to the Tennessee Department of Corrections ("TDOC").

**ANSWER**: Defendants lack information and knowledge sufficient to form a belief as to whether Plaintiff was sentenced to the Tennessee Department of Correction [sic] (TDOC) in December 1997. Defendants admit Plaintiff was sentenced to the TDOC on January 27, 1998, for six years for Especially Aggravated Robbery and Especially Aggravated Assault. Defendants further admit Plaintiff was sentenced to the TDOC on July 27, 1998, for eighteen years for Especially Aggravated Kidnapping.

8. On or about February 23, 1999, Plaintiff was sent to TDOC.

**ANSWER**: Admitted.

9. Plaintiff was continuously held in Tennessee in a jail or prison from September 2, 1995 to June 16, 1999.

**ANSWER**: Admitted.

10. On or about June 16, 1999, Plaintiff was extradited to Cook County on an arrest warrant and was held in Cook County Jail for pretrial detention for an alleged violation of Illinois law in 1993.

**ANSWER**: Admitted.

11. On or about April 29, 2003, Plaintiff was found guilty of violating Illinois law.

**ANSWER**: Admitted.

12. On or about May 29, 2003, Plaintiff was sentenced to 30 years to run consecutive to his existing sentence from Tennessee. The Judge credited Plaintiff 1,456 days for being held in pretrial detention on the Illinois case.

**ANSWER**: Defendants admit that the Judge found that Plaintiff was entitled to receive credit for time actually served in custody for a total credit of 1,456 days as of June 2, 2003. Defendants deny the remainder.

13. On or about July 28, 2003, Plaintiff returned to Tennessee to complete his remaining Tennessee sentence.

**ANSWER**: Admitted.

14. On or about January 15, 2009, Plaintiff concluded his Tennessee sentence and was transported to the Northern Reception and Classification Center in Joliet, Illinois, to commence his Illinois sentence.

**ANSWER**: Defendants lack information and knowledge sufficient to form a belief as to the truth of whether on January 15, 2009 Plaintiff concluded his Tennessee sentence. Defendants admit the remainder.

15. Thereupon, the facility's record office supervisor miscalculated Plaintiff's release date by failing to apply any good time credit or credit for 1,456 days actually served.

**ANSWER**: Denied.

16. On or about March 27, 2009, Plaintiff was transported to Menard Correctional Center.

**ANSWER**: Admitted.

17. Thereupon, IDOC personnel determined that Plaintiff should receive fifty percent good time credit against the thirty-year Illinois sentence.

**ANSWER**: Defendants admit that Plaintiff's sentence was eligible to be calculated by awarding day for day credit from the date of custody. Defendants deny that IDOC personnel determined that Plaintiff "should receive" "good time credit against the thirty-year Illinois sentence." Defendants lack information and knowledge sufficient to form a belief as to the truth of the remainder.

18. In or around October 2009, Plaintiff was transported to Western Illinois Correctional Center and stayed there until about July 2013.

**ANSWER**: Admitted.

19. While at Western Illinois Correctional Center, Plaintiff informed the facility's records office supervisor, Vanessa Bell, by various means, that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated.

**ANSWER**: Defendants admit Plaintiff informed an individual named Shelia Bell of his belief that 1,456 days of credit were not being applied against his sentence and that he believed his release date was miscalculated. Defendants deny Plaintiff's release date was miscalculated.

20. Vanessa Bell willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts demonstrating that Plaintiff's release date had been miscalculated.

**ANSWER**: Denied.

21. In or around July 2013, Plaintiff was transported to Big Muddy River Correctional Center and stayed there until about September 2015.

**ANSWER**: Admitted.

22. While at Big Muddy River Correctional Center, Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated.

**ANSWER**: Defendants lack sufficient information and knowledge to form a belief as to the truth of whether "Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated." Defendants deny Plaintiff's release date was miscalculated.

23. The facility's records office supervisor willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts that demonstrated that Plaintiff's release date had been miscalculated.

**ANSWER**: Defendants deny that Plaintiff's release date was miscalculated. Defendants lack information and knowledge sufficient to form a belief as to the truth of the remainder.

24. In or around September 2015, Plaintiff was transported to Centralia Correctional Center and stayed there until about April 2016.

**ANSWER**: Admitted.

25. While at Centralia Correctional Center, Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated.

**ANSWER**: Defendants lack sufficient information and knowledge to form a belief as to the truth of whether "Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated." Defendants deny Plaintiff's release date was miscalculated.

26. The facility's records office supervisor willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts that demonstrated that Plaintiff's release date had been miscalculated.

**ANSWER**: Defendants deny that Plaintiff's release date was miscalculated. Defendants lack information and knowledge sufficient to form a belief as to the truth of the remainder.

27. In or around April 2016, Plaintiff was transported to Robinson Correctional Center and stayed there until about July 2018.

**ANSWER**: Admitted.

28. While at Robinson Correctional Center, Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated.

**ANSWER**: Defendants lack sufficient information and knowledge to form a belief as to the truth of whether "Plaintiff informed the facility's records office supervisor that his 1,456 days of credit were not being applied against his sentence, and his release date was miscalculated." Defendants deny Plaintiff's release date was miscalculated.

29. The facility's records officer supervisor willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts that demonstrated that Plaintiff's release date had been miscalculated.

**ANSWER**: Defendants deny that Plaintiff's release date was miscalculated. Defendants lack information and knowledge sufficient to form a belief as to the truth of the remainder.

30. In or around July 2018, Plaintiff was transported to Vienna Correctional Center and remained there until about July 2021.

**ANSWER**: Admitted.

31. While at Vienna Correctional Center, Plaintiff informed the facility's records office supervisor, N. McGlone, and the warden, Matthew Swalls, that his 1,456 days of credit were not being applied against his sentence and his release date was miscalculated.

**ANSWER**: Denied.

32. N. McGlone willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts demonstrating that Plaintiff's release date had been miscalculated.

**ANSWER**: Denied.

33. Swalls willfully ignored Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts that clearly demonstrated that Plaintiff's release date had been miscalculated.

**ANSWER**: Denied.

34. In or around July 2021, Plaintiff was transported to Kewanee Life Skills Re-entry Center and stayed there until his release on February 22, 2022.

**ANSWER**: Admitted.

35. While at Kewanee Life Skills Re-entry Center, Plaintiff informed the facility's records office supervisor, J. Riggs, by various means, that his 1,456 days of credit were not being applied against his sentence and his release date was miscalculated.

**ANSWER**: Defendants admit Plaintiff informed J. Riggs of his belief that his 1,456 days of credit were not being applied against his sentence and that he believed his release date was miscalculated. Defendants deny Plaintiff's release date was miscalculated.

36. On or about August 17, 2021, J. Riggs responded that the Chief Supervisor in Springfield had already addressed Plaintiff's issue in 2011 and concluded that Plaintiff's credits were calculated correctly.

**ANSWER**: Admitted.

37. J. Riggs willfully opposed Plaintiff's request to apply the credits for 1,456 days actually served against his sentence and was deliberately indifferent to facts that clearly demonstrated that Plaintiff's release date had been miscalculated.

**ANSWER**: Denied.

38. On or about February 16, 2022, Plaintiff informed the facility's warden, James Carothers, that his 1,456 days of credit were not being applied against his sentence and his release date was miscalculated.

**ANSWER**: Defendants lack information and knowledge sufficient to form a belief as to the truth of this allegation.

39. On or about February 22, 2022, J. Riggs recalculated Plaintiff's sentence and determined that Plaintiff was supposed to be awarded 1,456 days credits for time actually served against his Illinois sentence and that his release date was supposed to be June 9, 2019. Plaintiff was released from prison that day.

**ANSWER**: Defendant J. Riggs denies that she "determined that Plaintiff was supposed to be awarded 1,456 days credits for time actually served against his Illinois sentence and that his release date was supposed to be June 9, 2019." Defendants admit Plaintiff was released from prison on February 22, 2022.

40. Plaintiff wrongfully served an extra 989 days in IDOC despite repeatedly demonstrating that he served his time.

**ANSWER**: Denied.

41. As a direct and proximate result of one or more of the above-mentioned actions and/or omissions by Defendants, Plaintiff suffered significant injuries, including but not limited to the loss of liberty, invasion of privacy, humiliation and indignities, and suffered great mental and emotional pain in an amount yet to be ascertained.

**ANSWER**: Denied.

42. The actions and/or omissions mentioned above by Defendants were willful, wanton, malicious, oppressive, and done with deliberate indifference to Plaintiffs' rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

**ANSWER**: Denied.

43. By reason of the above-mentioned actions and/or omissions by Defendants, Plaintiff retained attorneys to institute, prosecute, and render legal assistance to them in the within action so that they might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**ANSWER**: Defendants admit that Plaintiff retained attorneys and that Plaintiff requests payment of a reasonable sum for attorney's fees. Defendants deny the remainder.

<u>Answer to Count I: Plaintiff Against Defendants for Cruel and Unusual Punishment in Violation of the Eighth Amendment</u>

44. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-three (43) hereat as though fully set forth at this place.

**ANSWER**: Defendants incorporate their respective answers to paragraphs 1 through 43.

45. Defendants deprived Plaintiff of his rights, privileges, and immunities secured to him by the Eighth Amendment to the Constitution of the United States and laws enacted thereunder.

**ANSWER**: Denied.

46. Defendants were deliberately indifferent to Plaintiff's requests to be freed by willfully and deliberately failing to conduct a meaningful investigation into the factual basis for

Plaintiff's complaints and grievances. Defendant's failure to conduct a meaningful investigation of Plaintiff's complaints caused him to be unlawfully imprisoned beyond his sentence. Accordingly, Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

**ANSWER**: Denied.

Answer to Prayer for Relief

**WHEREFORE**, Plaintiff Derrick Vernon, by and through his attorneys, Ed Fox & Associates, request judgment as follows:

1. That Defendants, and each of them, known and unknown, and other unnamed and unknown Defendants be required to pay Plaintiffs general damages, including emotional distress and pain and suffering, in a sum to be ascertained;

2. That these same Defendants be required to pay Plaintiffs special damages;

3. That these same Defendants be required to pay Plaintiffs' attorneys fees pursuant to § 1983 of Title 42 of the United States Code, § 1988 of Title 42 of the United States Code, the Equal Access to Justice Act, or any other applicable provision;

4. At all times mentioned herein, the Unknown and Unnamed Illinois Department of Corrections Personnel were employed by the Illinois Department of Corrections and were acting under the color of state law and as the employee, agent, or representative of the Illinois Department of Corrections. Defendants are being sued in their individual capacities. When the names of unknown and unnamed Defendants are ascertained, Plaintiff will seek leave of Court to amend this complaint to add their names.

5. That Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff have such other and further relief as this Court may deem just and proper.

**ANSWER**: Defendants deny that Plaintiff is entitled to any relief whatsoever.

## Jury Demand

Defendants N. McGlone and J. Riggs demand trial by jury on all issues so triable.

## Affirmative Defenses

1. **Qualified Immunity**. Plaintiff's claim is barred by qualified immunity because Defendants' alleged conduct did not violate any clearly established statutory or

constitutional rights of which a reasonable person would have known. (*See* Defendants' Motion to Dismiss, ECF No. 26.)

2. **Statute of Limitations**. Plaintiff alleges that since at least June 9, 2019, he was entitled to be released from Illinois Department of Corrections custody. On September 9, 2022, Plaintiff commenced this action by filing his initial complaint against Defendants N. McGlone and J. Riggs regarding his alleged unconstitutional confinement. The statute of limitations under claims arising under 42 U.S.C. § 1983 is two years. 735 Ill. Compl. Stat. 5/13-202. Plaintiff's claim accrued on June 9, 2019. Accordingly, Plaintiff failed to commence this action within the time prescribed by law, and any relief to which Plaintiff may be entitled is limited in whole or in part.

3. **Failure to Mitigate**. Plaintiff alleges that since at least June 9, 2019, he was entitled to be released from Illinois Department of Corrections custody. On February 22, 2022, Plaintiff was released from custody. However, Plaintiff failed to take affirmative action to mitigate his damages by failing to, among other things: (1) file and appeal institutional grievances between June 9, 2019 through September 10, 2019, and between September 12, 2019 through February 22, 2022, relating to his purported entitlement to release; or (2) file any complaint or petition in any court of competent jurisdiction relating to his purported entitlement to release. Accordingly, by Plaintiff's affirmative actions and omissions, he failed to mitigate his damages and any relief to which Plaintiff may be entitled is limited in whole or in part.

4. **Wrong Venue**. Plaintiff alleges that on June 9, 2019, he was entitled to be released from the custody of the Illinois Department of Corrections. Plaintiff further alleges that, after June 9, 2019, he was incarcerated at Vienna Correctional Center in Vienna, Illinois, and that N. McGlone violated his constitutional rights in Vienna, Illinois. Plaintiff further alleges that he was transferred from Vienna Correctional Center to the Kewanee Life Skills Re-entry Center in Kewanee, Illinois, and that J. Riggs violated Plaintiff's constitutional rights in Kewanee, Illinois. Vienna is located within the Southern District of Illinois. Kewanee is located in the Central District of Illinois. Neither N. McGlone nor J. Riggs reside within the Northern District of Illinois. Pursuant to 28 U.S.C. §§ 1391 and 1406(a), Plaintiff's claims must be dismissed without prejudice or transferred to a U.S. District Court of either the Central or Southern Districts of Illinois.

5. **Collateral Estoppel**. On January 28, 2010, Plaintiff filed a petition for post-conviction relief in the Circuit Court of Cook County, Illinois, case number 99-CR-20472. In that petition, Plaintiff alleged he was not being given credit for 1,456 days of pre-trial custody in violation of the circuit court's order of conviction from 2003 that stated "credit for time actually served in custody for a total credit of 1,456 days." On or about April 29, 2010, Judge Mary Margaret Brosnahan, denied Plaintiff's petition, stating that Plaintiff was "not entitled to receive credit for the instant case due to time served on an unrelated case where the sentences are to be served consecutively." Judge Brosnahan further stated that "[Plaintiff] has received the 1,456 days he is entitled to as reflected on his mittimus. Therefore, his claim is without merit." Thereafter, Plaintiff filed a notice of appeal to the Illinois Appellate Court. On August 9, 2011, the Illinois Appellate Court affirmed. Accordingly, Plaintiff's claim is barred by the doctrine of collateral estoppel.

Date: June 9, 2023

                                        Respectfully submitted,
                                        N. MCGLONE
                                        J. RIGGS

                                        By: /s/ *Daniel N. Robbin*
KWAME RAOUL                          DANIEL N. ROBBIN
Attorney General of Illinois        BAR NO. 6321386
                                        Assistant Attorney General
                                        Office of the Illinois Attorney General
                                        General Law Bureau, Prisoner Litigation
                                        100 W. Randolph St., 13th Fl.
                                        Chicago, Illinois 60601
                                        (312) 814-7199
                                        daniel.robbin@ilag.gov