IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK VERNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 4890 |
| ) | |
| KENDRA ELBERSON, LORI ) | |
| CRAFTON, SHEIL BELL, ONA ) | |
| WELCH, ERNIE VANZANT, ) | |
| NAOMI MCGLONE, TRAVIS ) | |
| WENTWORTH, MATTHEW ) | |
| SWALLS, JANE RIGGS, ) | |
| and TRACY PERRY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Derrick Vernon has sued a number of current and former employees of the Illinois Department of Corrections under 42 U.S.C. § 1983. Vernon was incarcerated in a series of IDOC facilities throughout the State of Illinois. He was first convicted in Tennessee state court and then—before he had completed his Tennessee sentence—was extradited to Illinois to face a charge here. After about four years, Vernon was convicted of that charge. The Illinois judge imposed a sentence consecutive to Vernon's Tennessee sentence and granted Vernon 1,456 days credit for time served. Vernon then was returned to Tennessee and completed service of his sentence there. He was sent to IDOC in 2009 to begin serving his Illinois sentence.

According to Vernon's second amended complaint, he was incarcerated at a

series of IDOC prisons. The first was the Northern Reception and Classification Center in Joliet, which is in the Northern District of Illinois. Vernon was there from January through March 2009. He then was transferred to Menard Correctional Center, which is in the Southern District and remained there from March through October 2009. From there he was transferred to Western Illinois Correctional Center in Mt. Sterling, which is in the Central District. Vernon was there from October 2009 through July 2013. He then was transferred to Big Muddy Correctional Center, which is in the Southern District, and was h eld there from July 2013 through September 2015. From there Vernon was transferred to Centralia Correctional Center, also located in the Southern District, and he was held there until April 2016. Vernon was next transferred to Robinson Correctional Center, also in the Southern District, and he was held there until July 2018. Then Vernon was transferred to Vienna Correctional Center, also in the Southern District, and he was held there until July 2021. Vernon's last transfer was to Kewanee Life Skills Re-entry Center, in the Central District. He was released from custody in February 2022.

Vernon filed the present lawsuit on September 9, 2022. In his second amended complaint, Vernon alleges that various IDOC officials, in calculating his release date, failed to properly credit him with the 1,456 days ordered by the Illinois sentencing judge. He contends by the time this credit was appropriately applied and he was released, he had been imprisoned for about two and one-half years longer than he should have been. Vernon alleges that each of the defendants was deliberately indifferent to the violation of his Eighth Amendment rights by ignoring and/or failing to investigate his claims—made via grievances and other communications—that court-ordered credits

2

were not being applied in calculating his release date. Specifically, Vernon asserts these claims against the following defendants, who at the time worked at the following prisons and in the districts listed after their names:

- Kendra Elberson, NRC (Northern District);
- Lori Crafton, Menard (Southern District);
- Sheila Bell, Western Illinois (Central District);
- Ona Welch, IDOC Records Office (Central District);
- Ernie VanZant, Big Muddy (Southern District);
- Naomi McGlone, Vienna (Southern District);
- Travis Wentworth, Vienna (Southern District);
- Matthew Swalls, Vienna (Southern District);
- Jane Riggs, Kewanee (Central District);
- Tracy Perry, Kewanee (Central District).

The defendants have moved to dismiss for failure to state a claim and for improper venue and have moved—in the alternative to the venue motion—to transfer the case to the Southern District of Illinois.

## Discussion

**1. Motion to dismiss**

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the

3

plaintiff's favor." *Id.*

In seeking dismissal, the defendants argue first that the complaint does not include allegations sufficient to put them on notice of what each of them is claimed to have done or failed to do. This argument borders on the frivolous. The complaint alleges, in appropriate and sufficient detail, exactly what Vernon contends each defendant did or did not do. And Vernon has done this on a defendant-by-defendant basis; he has not lumped the defendants together with a general overall allegation of deliberate indifference. *See* 2d Am. Compl. ¶¶ 24 (Elberson; failure to respond to Vernon's communications and failure to investigate his claim that the credits had not been applied), 29-31 (Crafton; failure to respond to Vernon's communications, failure to investigate contention that his release date was miscalculated); 35-36 (Bell; failure to review relevant law or consult with counsel, failure to consult with higher-ups and Tennessee officials, and failure to investigate Vernon's claims); 38 (Welch; failure to investigate Vernon's claims); 42 (VanZant, same); 47-48 (McGlone; failure to review relevant law or consult with counsel, failure to review Vernon's file, failure to consult with higher-ups or Tennessee officials, failure to personally recalculate the sentence credits); 50-52 (Swalls; denial of grievance without consulting prison or IDOC record office); 54 (Wentworth, failure to investigate Vernon's claims); 60 (Perry; failure to investigate Vernon's claims); 611 (Riggs; failure to review relevant law or consult with counsel; failure to consult with higher-ups or Tennessee officials). These allegations are sufficient to put each defendant on notice of what he or she is claimed to have done or failed to do.

The defendants' related contention that Vernon's complaint is deficient because

4

he does not identify the sentencing laws at issue, how they should be interpreted, and what an investigation would have shown, likewise lacks merit. Vernon has explained, sufficiently to state a plausible claim for relief, that the credits ordered by a judge were not applied (or were not applied correctly) in calculating his release date; that investigation would have made this readily apparent; and that each defendant effectively stuck his or her head in the sand. Information regarding precisely what each defendant did or did not do is largely outside Vernon's knowledge without discovery, and in any event that sort of detail is not required in a complaint for it to pass muster.

The defendants' second contention in support of dismissal for failure to state a claim is that the first five defendants in the chronological chain—Elberson, Crafton, Bell, Welch, and VanZant—cannot possibly have proximately caused Vernon's over-incarceration. Their argument is that, for each defendant, the next defendant broke the chain of causation. This argument likewise lacks merit, at least as a basis for dismissal for failure to state a claim. The doctrine of superseding cause applies where a defendant's wrongdoing contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable. *See, e.g., Exxon Co., U.S.A. v. Sofec, Inc.*, 518 US. 830, 837 (1996). The application of this doctrine, however, typically involves questions of fact. *See id.* at 840-41. In this case, proximate causation cannot be determined on a motion to dismiss for failure to state a claim unless the Court views the complaint's allegations in the light *least* favorable to Vernon, which is the opposite of the correct standard. By way of example, for all one knows at this point, each succeeding defendant in the chain relied on the earlier defendants' denials of Vernon's claims and/or their miscalculations of his release date.

And this plausibly could have been foreseeable to the earlier actors; at least, the Court cannot appropriately conclude otherwise on a motion to dismiss for failure to state a claim.

Third, these same defendants—Elberson, Bell, Welch, VanZant, and Wentworth—argue that the two-year statute of limitations applicable in Illinois to claims under 42 U.S.C. § 1983 ran before they were sued. But "a claim cannot accrue until the would-be plaintiff is entitled to sue, yet the existence of ongoing detention forbids a suit for damages contesting that detention's validity." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). Thus Vernon's claim did not accrue until he was released in February 2022. The Court therefore declines to dismiss the complaint under Rule 12(b)(6) based on these defendants' limitations defense.

The next question involves venue. In reviewing a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), a court draws reasonable inferences and resolves factual conflicts in favor of the non-moving party. *See, e.g., Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 n. 19 (7th Cir. 2014).

Just one of the defendants, Elberson, lives in this District. One of the defendants, Wentworth, lives in Kentucky, and based on an affidavit he submitted, he was living there as of 2022, before he was added to the suit via the second amended complaint filed in September 2023. Thus 28 U.S.C. § 1391(b)(1), which permits filing suit in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," does not apply.

Vernon argues that 28 U.S.C. § 1391(b)(2), which permits filing suit in "a judicial district in which a substantial part of the events and omissions giving rise to the claim

6

occurred . . .," authorized him to file the case here. This subsection's requirements are satisfied here. It is true that more of the relevant events took place in the Southern and Central Districts, but section 1391(b)(2) simply requires a substantial portion of the relevant events to have taken place in a district, not a majority of the material events. *See, e.g., Wm. Wrigley Jr. Co. v. Terphogz, LLC*, No. 21 C 2357, 2021 WL 5356229, at *6 (N.D. Ill. Nov. 17, 2021); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952 (N.D. Ill. 2017) (St. Eve, J.). "To be 'substantial,' it is enough to establish that the events that took place in Illinois were 'part of the historical predicate for the instant suit.'" *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). The events giving rise to Vernon's claim include the order for application of good time credits, which was entered by a judge in Cook County, and the first miscalculation of that time by IDOC personnel, which took place at the NRC, also in this District. That is enough to constitute a "substantial" portion of the events giving rise to the claim.

For these reasons, the Court denies the defendants' motion to dismiss.

**2.**     **Motion to transfer**

The defendants have alternatively moved to transfer the case to the Southern District of Illinois under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a).

To obtain a transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient." *Heller Fin., Inc. v.*

7


*MidWhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989*); Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

In evaluating the convenience of the parties and witnesses, a court considers (1) the plaintiff's choice of forum, (2) where the material events occurred, (3) the relative ease of access to proof, (4) the parties' convenience, and (5) the witnesses' convenience in litigating in the respective forums. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000); *see also Research Automation*, 626 F.3d at 978.

First, Vernon lives in Texas, so this District is not his home forum. That does not mean that his forum choice is not entitled to deference, but the fact that it is not his home forum is a factor appropriately considered in the overall balance. Second, as indicated earlier, some of the material events took place in this District, but it is only fair to say that most of them took place in the Southern and Central Districts (consistent with its earlier comments on proximate cause, the Court makes no judgment at this time whether the earlier calculations of Vernon's release date are more, or less, material than the later calculations).

Third, the relevant records in this case include Cook County court records and

8

Vernon's IDOC "master file," which is located at the last institution where he was incarcerated, which is in the Central District. But this is not a significant consideration in the overall section 1404(a) balance. As Vernon notes, these days records are typically produced digitally rather than by someone going to where hard copies (or even the primary digital version) are physically located. *See, e.g., Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation [and] the rapid transmission of documents . . . make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

The convenience of the parties is the primary factor argued by the defendants. . Vernon lives in Texas and thus will have to travel for trial or any in-person pretrial hearing at which his appearance is needed, irrespective of where the case is venued. If it is transferred to the Southern District, he likely would fly into St. Louis, Missouri, which may be close to the courthouse or not all that close, depending on where the case was assigned among the several divisions of that District. Court in that district is held at East St. Louis and Benton. *See* https://www.ilsd.uscourts.gov. East St. Louis is, of course, just across the Mississippi River from St. Louis; Benton is about 110 miles from the St. Louis airport and about 90 miles from the Evansville, Indiana airport, which likely has way fewer incoming flights than St. Louis. If the case is transferred to the Central District, there are likewise several divisions, and it is not apparent to this Court to which of those divisions the case would be assigned. Court for the Central District is held at Peoria, Urbana, Springfield, and Rock Island, none of which is all that close to what one would consider a "major" airport, but some of which are reachable via connections

9

through Chicago or, perhaps, St. Louis or, in the case of Rock Island, by flying to Davenport or Cedar Rapids, Iowa—or by driving from Chicago.

Vernon's lawyer is in Chicago. Contrary to the defendants' argument, the Court is not prepared to rule this out as a factor to be considered. When he decided to file suit, what was he supposed to do, hire a lawyer in Texas to litigate an Illinois case? Or if an Illinois lawyer, was he supposed to find—as opposed to a lawyer in Chicago, a metropolitan area with literally thousands of lawyers—one that was near one of the prisoners but not close to the others: in or near Menard? or Vienna? or Kewanee? or Springfield? That said, the location of Vernon's lawyer cannot be a significant factor in the section 1404(a) analysis, because it is the one factor subject to a party's control and therefore potential manipulation (though the Court is not suggesting that occurred here).

The bottom line is that transfer to the Southern District, as proposed (or, for that matter, to the Central District) would make the case more inconvenient for Vernon to litigate. The converse is, however, true for the defendants other than Elberson. They all live in the Central and Southern Districts, except for one who lives in Kentucky. Travel to Chicago for trial—if the case goes to trial—will be inconvenient for them just as it would be inconvenient for Vernon to get to a downstate location. Vernon points out that an out-of-district party may testify by video, but that argument works both ways. In any event it is virtually a truism that a party facing potential liability, including for punitive damages not indemnified by the State of Illinois, risks being prejudiced if he or she is not in court during the trial of the lawsuit. On the other hand, the defendants are located all over the Illinois map, and many of them would have long trips to court for trial even if the case were transferred (Vienna, for example, is over 130 miles from East St. Louis,

10

and Springfield is over 160 miles from Benton and over 90 miles from East St. Louis).

As far as non-party witnesses are concerned, the defendants do not identify any such witness in particular. Their reference to the *possibility* of other witnesses at downstate prisons doesn't cut it. The parties' Rule 26(a)(1) disclosures were due before the defendants' reply brief, so if there were other truly material witnesses, the defendants could have and should have identified them. The defendants have forfeited this point.

Turning to the so-called "public interest factors" under section 1404(a), these include the relative congestion of the respective dockets; prospects for a speedy trial; "the respective desirability of resolving controversies in each locale"; the respective courts' familiarity with the applicable law; and the relationship of each community to the controversy. *See, e.g., Research Automation*, 626 F.3d at 978. The fourth factor does not tilt either way here; the applicable law is federal law as applied in the Seventh Circuit, with which judges in both this District and the Southern District are equally familiar. On the first factor, relative congestion, the defendants rely on a wildly off-kilter application of a statistic: they point out that from June 2022 through June 2023, 9355 cases were filed in this District versus "only" 4415 in the Southern District. But this District has over thirty active and senior district judges, whereas the Southern District has five. Thus this factor actually tilts *against* transfer. On the second factor, the defendants also cite average time-to-trial statistics, which favor the Southern District to some extent. But these figures are averages; they aren't tied to a specific type of case. And the statistics show that the average time to trial in the Southern District is forty-four months, just a little short of four years. This Court has no intention of allowing this case

11

to be pending anywhere near that long before trial. In fact, the Court will take this factor off the table right now: the case is set for trial on December 9, 2024 at 9:15 a.m. And even if it has to be continued by a bit, any trial will be completed well under three years from the date of filing, in other words well under the average time to trial in the Southern District.

As far as the other two factors, which involve the relationship between the controversy and particular locales, the events in this case are spread across Illinois, meaning that no one community and no one district has a close tie to the overall controversy. Indeed, there are as many defendants whose challenged actions or omissions took place in the Central District as in the Southern District, which is the district where the defendants want the case to be transferred.

In summary, the public interest factors are at best a wash for defendants, and the only private-interest factor that even arguably favors transfer is the location-of-events factor. This is a case in which the primary effect of a transfer would be to shift the burden of inconvenience from the defendants to the plaintiff. The Court concludes that the pertinent factors do not tilt strongly enough in favor of transfer to make the proposed transferee district "clearly more convenient" as required, or to overcome the weight given to the plaintiff's choice of a forum.

### Conclusion

The Court denies the defendants' motion to dismiss and their motion to transfer for the reasons stated above. The telephonic hearing set for January 23, 2023 is vacated. The next telephonic hearing in the case will be the one set for February 20, 2024 at 9:05 a.m. The case is set for a jury trial of approximately four days on

December 9, 2024 at 9:15 a.m.

Date: January 20, 2024

_____
MATTHEW F. KENNELLY
United States District Judge