IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK VERNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 4890 |
| ) | |
| KENDRA ELBERSON, LORI ) | |
| CRAFTON, SHEILA BELL, ONA ) | |
| WELCH, ERNE VANZANT, ) | |
| NAOMI MCGLONE, TRAVIS ) | |
| WENTWORTH, MATTHEW ) | |
| SWALLS, JANE RIGGS, and ) | |
| TRACY PERRY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Derrick Vernon has sued a number of Illinois Department of Corrections officials under 42 U.S.C. § 1983, alleging that they violated his rights under the U.S. Constitution's Eighth Amendment by causing him to be imprisoned beyond the lawful term of his sentence. The defendants have moved for summary judgment. For the reasons stated below, the Court grants the defendants' motion.

### Facts

Because the defendants have moved for summary judgment, the Court views the facts in the light most favorable to Vernon.

In April 1993, Vernon, who at the time evidently went by the name Derrick Crowder, committed a murder in Illinois. Pl.'s Ex. 6. In June 1993, Vernon committed

the crimes of aggravated kidnapping and aggravated assault in Tennessee. Pl.'s Ex. 7. Vernon was later arrested in Minnesota and was taken to Illinois. In July 1998 (as best as the Court can tell), Vernon was sentenced in Tennessee to consecutive sixteen- and eight-year prison terms, for a total of twenty-four years.

On June 16, 1999, Vernon was transferred from Tennessee to Illinois to address the Illinois murder charge. He was found guilty, and a Cook County, Illinois judge sentenced him to a thirty-year prison term, consecutive to his Tennessee sentence. On June 2, 2003, the Illinois judge entered a corrected order of commitment and sentence—a mittimus, in Illinois lingo—that set out the sentence, including the fact that it was consecutive to the Tennessee sentence. The mittimus also stated, "[t]he Court finds that the defendant is entitled to receive credit for time actually served in custody for a total credit of 1,456 days as of the date of this order." Defs.' Ex. 3.

Vernon was transferred back to Tennessee on July 28, 2003 to complete service of his Tennessee sentence. It is undisputed that Tennessee authorities considered Vernon to have been serving his Tennessee sentence while he was in Illinois and thus that Vernon was credited against his Tennessee sentence for the period he had been in custody in Illinois (from June 16, 1999 through July 28, 2003), which, as the Court calculates it, was 1,503 days. Those 1,503 days subsume the 1,456 days for which the Illinois judge had awarded Vernon credit. In other words, Vernon got credit on his Tennessee sentence for the same time for which the Illinois judge had awarded him credit.

The Court notes that in his statement of additional facts submitted with his response to summary judgment—and to some extent in his response brief—Vernon

attempts to suggest there is a genuine factual dispute about this. That is not the case. . Vernon squarely admitted in response to a request to admit that the Tennessee authorities considered him to be serving his Tennessee sentence while he was in pretrial detention in Illinois:

> REQUEST #4: Admit that the Tennessee Department of Corrections continued to count time towards your Tennessee sentence from June 16, 1999 to July 28, 2003, while you were physically located in Illinois custody.
>
> RESPONSE: Admit.

Def.'s Ex. 5 at 2. Vernon seems to balk at calling that "credit," *see id.* at 1 (response to request to admit 2); *see also* Pl.'s Stat. of Add'l Material Facts ¶ 6, but that's exactly what it is: the time Vernon served in custody in Illinois counted against his Tennessee sentence. There's no viable contention that what happened was anything *other than* giving Vernon full credit on his Tennessee sentence for the time he served in Illinois.

Vernon was released from Tennessee custody on January 15, 2009. On that date, he was transported to the Illinois Department of Corrections' Northern Reception and Classification Center (NRC). An IDOC correctional clerk named David Sarrazin performed a calculation of Vernon's sentence and filled out a sheet regarding his release date. Kendra Elberson was the records office supervisor at the NRC at the time. She inputted Sarrazin's information into IDOC's computer system. There is no evidence that either Elberson, who is a named defendant, or Sarrazin, who is not, made any specific determination regarding the interaction of Vernon's Tennessee and Illinois sentences or the double-credit issue. Elberson testified, however, that her understanding is that an imprisoned person cannot received credit on two different sentences served in two different prison systems for the same time served.

Vernon was transferred to Menard Correctional Center on March 27, 2009. In May 2009, Lori Rees, the Menard records office supervisor, sent a request to the Circuit Court of County to determine Vernon's offense date. In August 2009, after receiving the requested information, she performed a calculation of Vernon's sentence, applying day-for-day good conduct credits as provided by Illinois law as it existed at the time of Vernon's offense. Rees was aware of the Cook County judge's order awarding Vernon 1,456 days of credit for time served but did not apply it to his Illinois sentence. Rees's reasoning was that under an Illinois Supreme Court decision called *People v. Latona*, time-served credits are applied only once, to avoid double counting. *See* Pl.'s Resp. to Defs.' Stat. of Material Facts ¶ 26.

Vernon then filed a post-conviction petition in Illinois state court challenging the IDOC's refusal to give him credit for the 1,456 days ordered by the Cook County judge who had sentenced him. In April 2010, a different Cook County judge denied Vernon's petition, concluding that under *Latona*, he was not entitled to receive the credit. In 2011, the Illinois Appellate Court affirmed the denial of Vernon's post-conviction petition.

The defendants do not contend that, in calculating Vernon's release date, they relied on the judge's decision on the post-conviction petition. But each of the IDOC employees who addressed Vernon's release date relied on the same or similar reasoning that Rees had applied in 2009. Specifically, they all concluded that the time set out in the Illinois judge's sentencing order had been counted on his Tennessee sentence and thus that he was not entitled to have that same time also count against his Illinois sentence.

That reasoning has a foundation in *People v. Latona*, 184 Ill. 2d 260, 703 N.E.2d

4

901 (1998), a decision in which the Illinois Supreme Court considered two cases involving the calculation of time-served credits in cases involving consecutive prison terms. Latona, one of the defendants, was charged with an offense he committed while he was serving an unrelated prison sentence. He was found guilty on the new charge. While awaiting sentencing, Latona completed service of his earlier prison term and was transferred to county custody for sentencing on the new charge. The sentencing judge imposed a sentence consecutive to the earlier prison sentence and ultimately denied Latona credit for the time he had served in county custody after his release on the earlier offense.

A second defendant whose case was considered in *Latona*, named Martinez, pled guilty to murder and armed robbery and was sentenced to consecutive prison terms for those offenses. The sentencing judge denied credit for 379 days that Martinez had spent in custody prior to sentencing. The state appellate court reversed, allowing a 379-day credit on each of the consecutive sentences.

In the *Latona* decision, the state supreme court addressed "whether a defendant sentenced to consecutive sentences is entitled to two days' sentence credit—one for each sentence—on account of one day actually spent in presentence, county custody as a result of the charged offense or offenses." *Id.* at 269, 703 N.E.2d at 906. The court considered two Illinois statutes. The first provides:

> In determining the manner in which consecutive sentences of imprisonment . . . will be served, the Department of Corrections shall treat the offense as though he had been committed for a single term with the following incidents:
>
> . . .
>
> (4) the offender shall be awarded credit against the aggregate maximum

5

> term and the aggregate minimum term of imprisonment for all time served
> in an institution since the commission of the offense or offenses and as a
> consequence thereof . . . .

720 ILCS 5/5-8-4(e).  The second statute provides that "[t]he offender shall be given credit on the determinate sentence . . . for time spent in custody as a result of the offense for which sentence was imposed . . . ."  720 ILCS 5/5-8-7(b).

The court in *Latona* concluded that the credit requirement in section 5-8-7(b) "is meant to account for all time served in confinement for a particular offense," in order "to ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences."  *Latona*, 184 Ill. 2d at 270, 703 N.E.2d at 906.  The court noted that where concurrent sentences are imposed, a defendant gets "sentence credit on both offenses for each day he spent in simultaneous custody."  *Id.*  But it concluded that section 5-8-4(e) controls over section 5-8-7(b) in a case involving consecutive sentences.  Because section 5-8-4(e) provides that "consecutive sentences are to be treated as a single term of imprisonment, it necessarily follows that defendants so sentenced should receive but one credit for each day actually spent in custody as a result of the offense or offenses for which they are ultimately sentenced."  *Id.* at 270, 703 N.E.2d at 907.  Giving time-served credit on both of the consecutive sentences, would "in effect [ ] give[s] that offender a double credit, when the sentences are aggregated, for each day previously served in custody.  That cannot be what the legislature intended."  *Id.* at 271, 703 N.E.2d at 907.  The court concluded that Latona should get credit for the time he served in county custody following his release from prison on the earlier offense (he had not been given credit on any other sentence for that time) and that Martinez should get a single credit of 379 days on his aggregate

6

sentence. *Id.* at 272, 703 N.E.2d at 907.

*Latona* did not involve consecutive sentences imposed in two different states—which is the situation here. But Vernon has not cited any Illinois case going the other way in that context. And it is also worthy of note that the Illinois judge who denied Vernon's own post-conviction petition in 2010 thought that *Latona* governed the point. As indicated earlier, in 2010, Vernon filed a post-conviction petition in Cook County court, alleging that he was improperly being denied credit on his Illinois sentence for the 1,456 days of pretrial custody as set forth on the mittimus. A Cook County judge disagreed; the judge cited *Latona* for the proposition that Vernon "is not entitled to receive credit for the instant case," having received it on his Tennessee sentence. *See* Def.'s Ex. 15 at 4-5. Vernon appealed, and in 2011, the state appellate court affirmed. It's true that none of the IDOC officials who dealt with Vernon's case after that was aware of the courts' decisions, but it's hard to say, as Vernon does, that those decisions are irrelevant. Vernon's claim of deliberate indifference boils down to a contention that the defendants did not do a thorough or adequate job in investigating and deciding his contention that the credits should be applied against his Illinois sentence. But any official who *had* investigated the matter thoroughly almost certainly would have been led to the court decisions *in Vernon's own case* (which Vernon evidently did not tell the IDOC officials about) and thus would have learned that the state courts had squarely rejected Vernon's argument. It's hard to see how that would have led to anything other than a decision *not* to credit the 1,456 days against Vernon's Illinois sentence.[1]

---

[1] Vernon makes a detailed argument, relying on the definitional sections of the applicable Illinois statutes, to the effect that any rule against double-counting applies only when both sentences involve crimes committed, and sentences imposed, in Illinois.

7

During his incarceration in IDOC, Vernon made repeated complaints in which he contended that he was not getting appropriate credit for the time-served credit ordered by the sentencing judge. These complaints were not ignored; they were addressed and rejected. In each situation, Vernon's complaint was rejected based on the proposition that he could get credit only against one sentence for his time served, and he had already gotten that credit against his Tennessee sentence. In some situations *Latona* was cited; other times it was not.

Finally in February 2022, Tracy Perry, IDOC's chief records officer, was asked by IDOC's chief of programs, Jennifer Perrack, to look at Vernon's claim that his sentence had been miscalculated. Perry had already looked at Vernon's case once, about a year earlier, and had reviewed it in detail, concluding that under *Latona*, Vernon was not entitled to the 1,456 days of credit against his Illinois sentence because it had been applied against his Tennessee sentence. But when asked to look a second time in February 2022, Perry consulted with an IDOC staff attorney named Joel Diers. Diers told Perry that the time should be credited against Vernon's Illinois sentence but did not explain why. That same day, after the time was credited, Vernon was released from prison. This lawsuit followed.

The Court assumes for purposes of discussion that Vernon was held past the

---

Vernon may be right about this, but he cites no Illinois caselaw to support his position (though, to be fair, there's no Illinois caselaw going the other way either, aside from the decisions in Vernon's own case). And in any event, the question here is not whether Illinois officials applied Illinois law incorrectly. Vernon is asserting a claim for violation of his federal constitutional rights, not a claim for violation of state law. Thus the issue is not whether the officials erroneously applied state law but rather (as discussed below) whether they were *deliberately indifferent* to a known risk that Vernon was being imprisoned beyond the date he was entitled to be released.

date on which he was entitled to be released. The incarceration of a person beyond the date he is entitled to be released violates the Eighth Amendment "if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). To establish deliberate indifference, a plaintiff "must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903. Negligence, even gross negligence, is insufficient. *Id.* "A state officer is deliberately indifferent when he does nothing or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Id.* (internal citation omitted).

This isn't a case in which prison officials deliberately or even knowingly kept an imprisoned person incarcerated after the end of his sentence. And it isn't a case in which an imprisoned person's complaints of being held too long were ignored. The evidence shows that Vernon's complaints were addressed, albeit with determinations that his release date had been calculated appropriately. The real problem here is that the IDOC personnel are claimed to have gotten it wrong. It's not clear that they did, and even if they did, they were not alone: a Cook County Circuit Court judge and three Illinois Appellate Court justices came out the same way *in Vernon's own case*. And even if the IDOC personnel got Illinois law wrong, an error does not amount to deliberate indifference that is actionable under the Eighth Amendment: that's the import of the Seventh Circuit's determination that negligence, even gross negligence, does not amount to deliberate indifference. *See, e.g., Amato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) ("In making determinations about a prisoner's release, prisoner officials are permitted to rely upon a reasonable interpretation of a state statute, even if they are

9

ultimately mistaken.") (internal quotation marks omitted). Vernon may have a remedy in state court or in the Illinois Court of Claims for over-incarceration, but no reasonable jury could find on this record that the IDOC officials he has sued were deliberately indifferent.

## Conclusion

For the reasons stated above, the Court grants the defendants' motion for summary judgment [dkt. no. 171] and directs the Clerk to enter judgment stating: This case is dismissed with prejudice.

Date: November 12, 2024

_____
MATTHEW F. KENNELLY
United States District Judge